IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:15-CR-00275 |
| | ) | |
| Plaintiff, | ) | JUDGE DANIEL A. POLSTER |
| | ) | |
| -vs- | ) | |
| | ) | |
| JOHN CLEMENTS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## POSITION OF THE DEFENDANT AS TO SENTENCING FACTORS AND MOTION FOR DOWNWARD DEPARTURE

On May 22, 2017 the Defendant, John Clements, will come before this Honorable Court for sentencing in connection with a guilty plea to the following offense: one (1) count of Receipt of Visual Depictions of Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).  The purpose of the instant Memorandum is to bring to light additional information pertaining to Mr. Clements and his offense, as well as to elaborate on the various sentencing factors that will guide this Honorable Court's determination as to a fair and reasonable sentence in this case. Further, Mr. Clements respectfully requests that the Court depart downward as the evidence warrants a two-level reduction under U.S.S.G. §2G2.2(b)(1) and application of U.S.S.G.

{1290034-1}

§2G2.2(b)(6) constitutes impermissible double counting.   Finally, Mr. Clements respectfully requests a downward variance from the calculated Guidelines range.

## I.    <u>FACTUAL HISTORY</u>

The investigation of Mr. Clements began in February of 2014 when a law enforcement officer was alerted that a particular Internet Protocol ("IP") address appeared to have illegal files and/or images available for public download. PSR ¶7. Between February 25, 2014 and May 5, 2014, a law enforcement officer was able to download four (4) files of suspected child pornography from a user that was assigned this IP address. PSR ¶7.  Subsequently, investigators issued an administrative subpoena to identify the IP address associated with this account user.

On June 3, 2014, law enforcement officials executed a search warrant that was issued by a Judge of the Lake County Court of Common Pleas. PSR ¶9.  Upon arriving at the residence, the officers made contact with Mr. Clements and proceeded to question him regarding the child pornography investigation.  During the course of the interview, Mr. Clements admitted to downloading and viewing child pornography materials.  He further stated that he did not knowingly or intentionally share or distribute any of the materials that he downloaded.  The interview concluded without issue and his electronic devices were seized for further forensic examination. PSR ¶9-10.

Subsequent forensic analysis provided evidence that certain child pornography files were present on Mr. Clements' computer at some point in time.  However, the forensic examination was unable to find the Peer-to-Peer program on his computer.

Thus, the Government's forensic expert was unable to opine as to whether Mr. Clements ever shared or distributed any child pornography files.

Mr. Clements was ultimately Indicted with the following offenses, to wit: one (1) count of Receipt and Distribution of Visual Depictions of Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) (hereinafter "Receipt"); and one (1) count of Possessing Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (hereinafter "Possession").  On February 6, 2017, Mr. Clements appeared in Court and entered a plea of "Guilty" to one (1) count of Receipt of Child Pornography. He stands before this Honorable Court for the imposition of sentence at this time.

II.    **AT THE TIME OF SENTENCING, IT WILL BE THIS HONORABLE COURT'S DUTY TO IMPOSE A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO COMPLY WITH THE PURPOSES OF FEDERAL SENTENCING SET FORTH IN 18 U.S.C. §3553(a).**

In light of *United States v. Booker*, 543 U.S. 220 (2005), this Honorable Court is required to engage in a multi-step analytical process at sentencing.  First, the Court must determine, after making appropriate findings of fact, the applicable Guidelines range. *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008).  After making appropriate findings of fact, the Court must determine whether a sentence within that range serves the factors set forth in § 3553(a).  *Id.*  Finally, the Court must articulate the reasons for the sentence imposed in light of the factors set forth in § 3553(a).  *Id.*

### A.  Calculating the Appropriate Guidelines Range

As an initial matter, the Mr. Clements fully accepts responsibility for this offense. His life has been forever changed as a result of his choices and the repercussions for his conduct.  As a thirty-three (33) year-old facing the possibility of a substantial term of incarceration, Mr. Clements recognizes the severity of this situation and he is dedicated to separating himself entirely from the behavior that gave rise to the instant matter.  He is a non-contact offender who is remorseful and contrite and desires only a chance to return to society and live as a productive, law-abiding citizen.

He recognizes that his offense is serious and requires the appropriate attention of this Court.  While acknowledging that his conduct was illegal and unacceptable, there remain pertinent legal objections to the conclusions and advisory Guideline range set forth in the PSR that warrant consideration and resolution by this Court.  The United States Supreme Court has made clear that there is a due process right to be sentenced on the basis of accurate information. *United States v. Tucker*, 404 US 443 (1972).  In fact, the "sole interest of the defendant in sentencing is the right not to be sentenced on the basis of inaccurate or unreliable information."  *United States v. Lopez*, 898 F2d 1505, 1512 (11th Cir. 1990).

 Part of this fair sentencing procedure has been codified in Rule 32(i)(3), which provides that at sentencing the court:

> (B) must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute, or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter at sentencing; and (C) must append a copy of the court's determination under this rule to any copy of the presentence report made available to the Bureau of Prisons.

Once specific objections to the PSR are made, findings are required, and failure to do so will result in a remand for re-sentencing.  *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990).  A sentencing court's obligation to make findings of fact does not simply reach issues which would have an effect on the sentencing Guidelines; rather, the PSR has importance beyond sentencing.  Therefore, resolution of all issues is imperative.  *United States v. Blanco*, 884 F.2d 1577, 1580 (3d Cir. 1989).

### 1.  Motion for downward departure

The PSR contains several enhancements that the Probation Officer has determined to be applicable in the case at bar.  For the reasons that follow, and additional information and arguments to be presented at the sentencing hearing in this matter, Mr. Clements respectfully submits that these enhancements should not apply in this case.

### a. U.S.S.G. §2G2.2(b)(1) – base offense level

The final PSR notes that the base offense level applicable in this case is 22. PSR ¶20. However, U.S.S.G. §2G2.2(b)(1) expressly provides that a two (2) level reduction is appropriate where the defendant's conduct is limited to the receipt or solicitation of material involving the sexual exploitation of a minor and the defendant did not intend to traffic in, or distribute, such material.

{1290034-1}

5

As the PSR correctly notes, Mr. Clements denied any intentional distribution of child pornography throughout the course of his interview with law enforcement officers. *See* PSR ¶10.  Moreover, subsequent forensic testing of Mr. Clements' seized electronic devices established that the particular files allegedly downloaded from Mr. Clements during the undercover investigation were not present.  Likewise, the forensic examinations failed to show that the Shareaza software was installed on Mr. Clements' electronic devices.  As a result, the Government's forensic expert was unable to provide any evidence to establish that Mr. Clements was knowingly sharing files.

Based upon the foregoing facts and circumstances, Mr. Clements respectfully submits that the proper base offense level should be 20.

### b. U.S.S.G. §2G2.2(b)(6) – use of a computer

Mr. Clements further submits that the two level enhancement for "use of a computer" pursuant to U.S.S.G. §2G2.2(b)(6) is also without merit. *See* PSR ¶23.  To that end, the undersigned respectfully submits that the Sixth Circuit's decision in *United States v. Lewis*, 605 F.3d 395 (6th Cir. 2010) is distinguishable from the case at bar.  In rejecting the double counting argument, the Sixth Circuit held that the defendant did not need to use a computer in order to violate the criminal statute in question.  Here, however, the Indictment expressly provides that a computer (*i.e.* no other device) was used to facilitate the crime.  Precedent case law from other jurisdictions supports this contention. *See e.g. United States v. Baldwin*, 743 F.3d 357, 362 (2nd Cir. 2014)(district court

declined to apply two level enhancement for use of a computer after determining that said enhancement was duplicative of all other enhancements).

Furthermore, the United States Department of Justice (hereinafter "DOJ") has issued policy statements that provide further support for the rejection of this enhancement.  Specifically, in March of 2013, the DOJ wrote a letter to the U.S.S.C. setting forth various suggested revisions to the child pornography guidelines.  Included amongst said revisions was the DOJ's suggestion that the two (2) level enhancement for using a computer under U.S.S.G. §2G2.2(b)(6) be eliminated in its entirety.  As the DOJ explained, "[b]ecause the vast majority of child pornography offenses now involve the use of a computer, this specific offense characteristic should be eliminated and replaced by others…which better distinguish between different classes of offenders." See DOJ Letter (March 5, 2013), available at: http://sentencing.typepad.com/files/doj-letter-to-ussc-on-cp-report.pdf.

Based upon the foregoing arguments, Mr. Clements respectfully submits that application of U.S.S.G. §2G2.2(b)(6) is unwarranted and constitutes impermissible double-counting.

### c. General objection to U.S.S.G. §2G2.2

Mr. Clements submits a general objection to the Court's use of and reliance upon the enhancements set forth in U.S.S.G. § 2G2.2.  As explained more fully *infra*, courts throughout this District have noted their rejection and criticism of these enhancements, which lack any basis in empirical study. *See, e.g., United States v. Marshall*, 870 F. Supp.2d

489 (N.D. Ohio 2012)(J. Zouhary)(varying downward to 60 month statutory minimum based, *inter alia*, on disagreements with §2G2.2); *United States v. McNerney,* 636 F.3d 772, 775–76 (6th Cir. 2011)(noting that Section 2G2.2 is "fundamentally different" from most other Guidelines because, whereas "Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing policies…the Commission did not use this empirical approach in formulating the Guidelines for child pornography").

Based upon the foregoing arguments, Mr. Clements respectfully requests that the Court grant a downward variance in the matter *sub judice*.  In the event that the Court determines that the aforementioned enhancements are applicable in this case, counsel maintains that the information and arguments supporting the instant objections are at the very least sufficient to warrant a downward variance in this case.

### III. AT THE TIME OF SENTENCING, IT WILL BE THIS HONORABLE COURT'S DUTY TO IMPOSE A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO COMPLY WITH THE PURPOSES OF FEDERAL SENTENCING SET FORTH IN 18 U.S.C. §3553(a).

In light of *United States v. Booker,* 543 U.S. 220 (2005), this Honorable Court must engage in a multi-step analytical process at sentencing.  Post-*Booker* opinions make clear that, although a sentencing court must "give respectful consideration to the Guidelines, *Booker* permits the court to tailor the sentence in light of other statutory concerns as well." *Kimbrough v. United States,* 552 U.S. 85, 101 (2007) (internal quotation marks and citation omitted).  Accordingly, although the "Guidelines should be the starting point and the initial benchmark," district courts may impose sentences within statutory limits

{1290034-1}

based on appropriate consideration of all of the factors listed in §3553(a), subject to appellate review for "reasonableness." *Pepper v. United States*, 562 U.S. ____, 131 S. Ct. 1229, 1241 (2011), *quoting Gall v. United States,* 552 U.S. 38, 49-51 (2007).  The Supreme Court has expressly directed that an "individualized assessment" of the case "based on the facts presented" is required.  *Gall,* 552 U.S. at 50.  Such analysis should be guided by "reasonableness" and an "individualized application of the statutory sentencing factors."  *Id.* at 46-47.  A sentencing judge retains "wide latitude to decide the proper degree of punishment for an individual offense and a particular crime." *United States v. Cavera,* 550 F.3d 180, 189 (2nd Cir. 2008).

**A.**   **Examination of the factors set forth in 18 U.S.C. § 3553(a) indicates that a downward variance from the Guidelines is reasonable and appropriate.**

**1.**   **Nature and circumstances of the offense and the history and characteristics of Mr. Clements.**

*a. history and characteristics of Mr. Clements*

In *Pepper, supra*, the United States Supreme Court endorsed the notion that post-*Booker* sentencing must focus as much on the offender, his individual background, and his need for services and rehabilitation as on the offense committed.  According to the Court, "highly relevant — if not essential — to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.  Permitting sentencing courts to consider the widest possible breadth of information about a defendant ensures that the punishment will suit not merely the

offense but the individual defendant." *Pepper*, 131 S. Ct. at 1240 (internal citations omitted).

Mr. Clements is thirty-three (33) years-old and has no prior criminal history apart from this case. PSR ¶36;40.  He was born on June 2, 1983 in Warren, Ohio where he resided with his parents, Deborah and Andrew, along with his three (3) younger siblings, Juliana Kingsbury, Michael Clements and Maria Kucmanic. PSR ¶40-41.  When he was three (3) years old, the family moved to Willoughby, Ohio. PSR ¶42-43.  He graduated from Willoughby South High School as the class valedictorian in June of 2002 with a Grade Point Average of 4.08. PSR ¶49.  Thereafter, he enrolled at the University of Toledo where he earned a Bachelor's Degree in Chemical Engineering. PSR ¶49.

After graduation, Mr. Clements was offered a job with Lincoln Electric. PSR ¶51. He worked as a Process Engineer for said company from 2007 until August of 2015, when he was terminated as a result of the instant proceedings. PSR ¶51.  Despite the current offense, Mr. Clements has maintained gainful employment as a technician with Herczog Heating and Air Conditioning Company in Willoughby, Ohio. PSR ¶50.  He indicated that he hopes to return to this employment upon his release from incarceration.

Mr. Clements' parents have been married for over twenty-five (25) years.  His mother works as a teacher and his father is a Priest with the St. Nicholas Orthodox Church. PSR ¶40.  Mr. Clements had an excellent childhood and maintains a close relationship with his parents and his siblings. PSR ¶42.  His parents taught him the

{1290034-1}

importance of taking responsibility for his actions and dedicating his life to the service of others. PSR ¶42.  Mr. Clements was active in his Church throughout his childhood, participating in the Youth Group and volunteering at various functions, including soup kitchens, cleaning local parks and assisting elderly members of the community with home maintenance projects. PSR ¶42.  As an adult, Mr. Clements has continued to exhibit a firm commitment to selflessness and service.

### b. Mr. Clements' rehabilitation

The PSR references Mr. Clements' history of mental health treatment.  Shortly after this case began, Mr. Clements voluntarily sought counseling from a licensed practitioner in the field of sexual addiction, Gary Echt (hereinafter "Echt").  He began seeing Echt on a weekly basis and has been active and productive participant in the rehabilitation process.  Mr. Clements indicates that the treatment process has been extremely helpful and he has expressed his sincere intention to return to group counseling upon his release from incarceration. PSR ¶47.

In a letter directed to the undersigned, Echt confirms that Mr. Clements has been an active participant in group counseling throughout the pendency of this matter.  *See* treatment letter from Gary Echt attached hereto as Exhibit "A."  He describes Mr. Clements' progress in treatment as well as his insight into the conduct underlying the instant offense:

> [d]uring his treatment with our agency, I have been very satisfied
> with the level of understanding he has demonstrated while in
> treatment. During his time here he has begun to fully comprehend
> the damage that he has done by contributing to the exploitation of
> these children, and at the same time recognizing the damage done to
> his family and his friends.

*See* Exhibit "A."

Although he recognizes the mandatory sentence that must be imposed in this case, Echt indicates that his recommendation would be for Mr. Clements to continue with his current treatment regimen in the community. *See* Exhibit "A."  Echt explained that although Mr. Clements engaged in abhorrent behavior, he does not "express an abnormally distorted view of children, women or sexuality, and he clearly does not have any antisocial tendencies or issues with impulsive behavior or substance abuse." *See* Exhibit "A."  Through treatment, Mr. Clements has gained insight into the issues that contributed to his offensive behavior.  Echt confirms that Mr. Clements does not use his sexual addiction as an excuse for engaging in this conduct; however, he come to appreciate how his addiction impacted the poor decisions that ultimately contributed to the instant offense. *See* Exhibit "A."

Echt explains that Mr. Clements' commitment to treatment and his progress in group therapy indicate that he presents a low risk of recidivism: "[b]ased upon his level of participation, his commitment to treatment, and his understanding of his sexual offending behavior I put him at a lower level of risk in terms of recidivism." *See* Exhibit "A."  Echt further opines that:

{1290034-1}

> Mr. Clements is an excellent candidate for continuation in Sexual
> Offender Treatment with an accompanying positive prognosis. He
> has always had a good attitude, strong conviction and recognizes the
> damage he has created for his direct victims, secondary victims (*i.e.*
> family and friends), and most importantly what steps he needs to
> take to ensure the safety of the community.

*See* Exhibit "A."

It is evident that, through treatment, Mr. Clements has come to appreciate the severity of his offense and the harm that he caused through his viewing of child pornography.  Moreover, he has gained better insight into the reasons that he engaged in this abhorrent behavior and the means to ensure that he does not recidivate in the future. He has found counseling to be extremely beneficial and he intends to continue with his treatment after the disposition of this matter.

### c. Mr. Clements' remorse and contrition

Mr. Clements completely accepted responsibility for his conduct in this case, as evidenced by the admissions he made to law enforcement and his entering a "Guilty" plea.  At the present time, he stands before this Court humbled, remorseful, and contrite. PSR ¶15-17.  He understands that his conduct was wrong and he is embarrassed and ashamed for putting himself and his family in this unfortunate situation. PSR ¶15.  He recognizes that although he never sought to harm anyone, especially those depicted in the materials on his computer, his actions have had this unintended effect. PSR ¶15.  He expressed his remorse for any pain and suffering that he caused as a result of this offense and for putting himself and his family in this unfortunate situation. PSR ¶15.  He desperately wants to atone for his mistakes and will do whatever is necessary to ensure

{1290034-1}

that he does not find himself in a similar predicament in the future.

Even when the Guidelines were mandatory, post-offense rehabilitation and the facilitation of the administration of justice were permissible grounds for a downward departure. *United States v. Rudolph*, 190 F.3d 720, 722-23 (6th Cir 1999); *United States v. Fagan*, 162 F.3d 1280, 1284-85 (10th Cir. 1998); *United States v. Garcia*, 926 F.2d 125 (2nd Cir. 1991); *United States v. Volpe*, 224 F.3d 72 (2nd Cir. 2000) (noting that activities facilitating the proper administration of justice may form the basis for a downward departure). After the Guidelines were made advisory, this conduct becomes even more important at sentencing.

Remorse is also a factor that sentencing courts are required to consider.  *Fagan*, 162 F.3d at 1284-85.  Under the prior departure analysis, "[b]ecause remorse is not a prohibited factor, but a factor already considered in the Sentencing Guidelines, a sentencing court may depart downward if it finds that remorse is present to an exceptional degree." Now that the Guidelines are merely advisory, these factors are relevant in determining a reasonable sentence after *Booker* under §3553(a).

Mr. Clements has candidly discussed his remorse, not only for committing this offense, but also for the resultant harm that it has caused his family as well as the individuals depicted in the images and/or videos. PSR ¶15-17.  He has no criminal history apart from the instant offense and has always tried to provide a positive example for his family, which included a strong work-ethic, a commitment to serving others and avoidance of any criminal behavior.  He has certainly learned his lesson as a result of

{1290034-1}

this case and a substantial term of incarceration is not necessary to ensure that he does not find himself in a similar predicament in the future.  Based upon his age and his lack of significant criminal history, it is respectfully submitted that Mr. Clements presents a very low risk for recidivism.  He humbly asks that this Court take these factors into consideration in determining a sentence that is not greater than necessary to comport with the principles and purposes of sentencing set forth in 18 U.S.C. § 3553(a).

### d support of family and friends

District courts sentencing below the calculated Guidelines range have recognized the importance of a defendant's strong social support system.  *See United States v. Wachowiak*, 496 F.3d 744, 747-48 (7th Cir. 2007)(explaining that "[w]here the Court has found strong social support from family, friends, and others the Court has deemed a lower sentence appropriate"); *see also United States v. Smith*, 275 Fed.Appx. 184, 186  (4th Cir. 2008)(relying on the defendant's strong family ties when imposing a sentence that varied 24 months below the calculated Guidelines range in a child pornography prosecution).

In anticipation of sentencing, undersigned counsel has received letters from people wishing to make their support of Mr. Clements known to this Honorable Court. These letters portray Mr. Clements as a dedicated, loving, hard-working, thoughtful, and supportive individual who is a devoted son and upstanding member of the local community. *See* support letters attached hereto as Exhibits "B" – "uuu."  The Choir Director in his Parish confirms that Mr. Clements has always been an active member of

{1290034-1}

the Church, including his participation in the Youth Group and Church choir as well as his service as an altar boy. *See* letter from Dennis Bell attached hereto as Exhibit "B." Likewise, Andrew Dzura confirms that Mr. Clements' "attitude, honesty, love, and willingness to help others, and his involvement to his Church and family has never faltered." *See* letter from Andrew Dzura attached hereto as Exhibit "C."

Through his actions, Mr. Clements has served as a role model not only for his family, but also for other members of the community.  As his sister explains: "I, along with my younger siblings aspired to be like John.  He was so effortlessly intelligent and always willing to help others…John frequently visits the sick and homebound from our church, offering to clean or repair things around their homes." *See* letter from Juliana Kingsbury, attached hereto as Exhibit "D."  Juliana also expresses her admiration and gratitude for the example that Mr. Clements has set for her three (3) young daughters:

> John is so special to them, reading them endless stories, building with blocks and playing them music on his guitar.  They adore their Uncle Johnny so very much and he adores them.  John is Godfather to my second daughter as well as several other children in our family and parish.  He is such a spiritual leader for them and a loving and patient support.

*See* Exhibit "D."

Likewise, Cari Furman notes that she "always admired John's dedication to his faith and his loving commitment to his church family." *See* letter from Cari Furman attached hereto as Exhibit "E."  Cari indicates that "John always acted a solid role model for me – whether it was his regular attendance to services, the unconditional love and support he always showed his family and friends, his dedication to excelling in school

{1290034-1}

and his career, John always provided a solid foundation for me to look up to." *See* Exhibit "E."

Several letters indicate the remorse Mr. Clements has experienced and his responsibility for his actions.  As Reverend Andrew Yavornitzky notes, "John has admitted his wrongdoing, and I am proud of him for that. It reflects the integrity he has demonstrated throughout his life. He does not try to minimize the inappropriateness of his action." *See* letter from Reverend Andrew Yavornitzky, attached hereto as Exhibit "F."  Similarly, Thomas Alexander indicates that "John is deeply sorry for the pain and anguish he has brought upon his family and friends. John admits he has done wrong and has remorse for his actions. He regrets that his actions have occurred and wishes to move on with his life in a positive way." *See* letter from Thomas Alexander, attached hereto as Exhibit "G."

Many of his supporters have expressed their initial disbelief when they learned about the instant proceedings as the conduct herein at issue was entirely uncharacteristic of the individual who they knew and loved.  For instance, Barry Sabol, a fellow Parishioner at St. Nicholas, states his belief that Mr. Clements possesses "the highest moral integrity and I feel strongly that the behavior to which John has pled guilty is totally out of character for him and in no way represents the John Clements that I have come to know." *See* letter from Barry Sabol, Ph.D., attached hereto as Exhibit "H." Similarly, his cousin, Christa Newtz, explains that:

> [t]o say that I was taken back when I heard about the crime John had committed, would be putting it mildly.  It simply does not equate with the person I know him to be.   John has always been a quiet, studious and pious person.  He is mild mannered, devoted to God and his family and has always been hard working by nature.  He is so wonderful to his parents and I have always admired the closeness that he shares with his siblings and nieces.

*See* letter from Christa Newtz, attached hereto as Exhibit "I."

Importantly, those who love and support Mr. Clements recognize that his misconduct does not define him or represent his true character.  As his mother explains:

> John is so much more than the charges that have been brought against him indicate. Except for the one "blink of an eye" in his life, he has been an upstanding young man, son, grandson, brother, cousin, uncle, Godfather, friend, employee. He has lost so much because of these charges: his home, his car, his career, his dignity, and it will be with him for the rest of his life. We all make mistakes and wish we could take them back. Most of us get to keep those mistakes between us and God.

*See* letter from Deborah Clements, attached hereto as Exhibit "J."  She implores the Court to "consider John as the kind and upstanding man that he is and not for the tiny fraction of his life that led to these charges you have before you." *See* Exhibit "J."

Despite his current predicament and impending incarceration, Mr. Clements has sincerely tried to remain positive about his future. He has used this unfortunate situation as an opportunity to learn from his mistakes and to better himself.  His sister, Maria Kucmanic, has witnessed this first-hand:

{1290034-1}

> [o]ver the past few years, I have watched my brother go through immense loss that would leave any person feeling alone and empty. John's life is forever changed by this alone. However, he has used much of this time to better himself and not pity himself. John is not only completely devoted to his job, but he has used the majority of his time at home learning new skills. He has spent hours teaching himself to write music and has since composed multiple beautiful new pieces that are already being used in our church choir. Though already very well-versed in his faith, John has poured himself into countless books to learn as much as he possibly can in hopes that he can better share this knowledge with others. These are only a few examples of how John has picked himself from the lowest point in his life and I believe that he has been able to do this because of the support that he receives from his family, church community, and friends.

*See* letter from Maria Kucmanic, attached hereto as Exhibit "K."  Mr. Clements' father, Andrew, echoes these sentiments:

> [i]t's been almost three years now since this all started. John's lost almost everything and even after he serves his sentence, prospects for meaningful employment will be extremely rare. Through it all, however, I've watched my son 'keep his chin up' and go forth positively as best as he can knowing what awaits him in few months. With all due respect to you and the court, I pray that as much leniency as possible be shown to him during sentencing. John has so much to offer the Church and society as a whole that it would be a shame for him to be away for too long.

*See* letter from Andrew Clements, attached hereto as Exhibit "L."

Mr. Clements has also expressed his intentions to serve others in need upon his release from prison.  Bradley Forment recounts some of the conversations that he has had with Mr. Clements during the pendency of this case:

John and I have had talks more recently about how he sees his future. One could easily expect to hear thoughts of despair, and sentencing to be an end to the life he has known. This has not been the case, and I could not be prouder of him for viewing life as an ongoing experience regardless of situation. He has talked about how he might use his own experience to educate others of the danger of certain choices and actions. He is also interested in attempting the writing of fiction along the lines of the books he enjoys. John has amazing musical skills, which he has used in his church and in his personal life. He hopes to utilize and improve those skills. In all of this, it is not only for his own needs that these interests have been kindled. He is genuine in his desire to provide service to others through his skills. That is simply who John truly is.

*See* letter from Bradley Forment, attached hereto as Exhibit "M."

> **2. Need for sentence imposed – to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.**

At the time of sentencing, it will be this Honorable Court's duty to impose a sentence sufficient, but not greater than necessary, to comport with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2)(A)-(D).  These purposes include promoting respect for the law, which incorporates providing just punishment in light of the seriousness of the offense; affording adequate deterrence; protecting the public from further crimes by Mr. Clements; and providing Mr. Clements with any needed rehabilitation and treatment.

### a. punishment and deterrence

When applying the above-referenced factors to the case at bar, it is apparent that a downward variance from the advisory Guideline range would sufficiently achieve the sentencing goals outlined in 18 U.S.C. § 3553(a).  Mr. Clements will be punished by a

{1290034-1}

mandatory *minimum* period of incarceration of five (5) years.  In addition to his loss of liberty, he will be punished by a lifetime of collateral consequences associated with being a convicted sex offender and felon.  *See Lawrence v. Texas,* 539 U.S. 558, 575 (2003)(recognizing that the "stigma" imposed for a sexual offense of conviction is "not trivial").

The pendency of these proceedings and the potential penalties as well as the substantial sentence that could be imposed has had a dramatic impact on Mr. Clements. He has had ample time to reflect upon his conduct and the consequences for his aberrant behavior.  For someone who has never been incarcerated before, the prospect of a substantial term of imprisonment which, at the very least, will include a mandatory minimum term of five (5) years, is not lost upon him.

With regard to deterrence, it is respectfully submitted that both general and specific deterrence will be satisfied by a lesser period of incarceration than that proposed by the advisory Guidelines.  As noted, minimally, Mr. Clements will serve five (5) years in federal prison.  Upon his release, he will be subject to additional mandatory federal supervision.  This supervision, in conjunction with any Court-ordered counseling and his documented family support, all work to thwart recidivism.

### b. age, recidivism and need for incapacitation

Moreover, as a thirty-three (33) year-old offender with no prior criminal history, Mr. Clements presents a low risk of recidivism.  In *United States v. Polito*, 215 Fed.Appx. 354 (5th Cir. 2007), the Fifth Circuit Court of Appeals upheld the downward variance

applied by the district court for a defendant convicted of Possessing Child Pornography. The district court explained that it imposed a sentence outside of the "prescribed Guideline range" because of the following:

> the defendant *was only eighteen years old and very immature at the time of the offense and his age and mental condition prohibited him from acting rationally*; there was no evidence that the defendant would be a threat to the community or young children in the area or that the defendant ever intended to conduct predatory sexual activities with children; the defendant had never been arrested for or convicted of any other offense; since the offense, the defendant had conducted himself in a very positive way, receiving mental health treatment, maintaining employment, and avoiding any problem with the law, which made him atypical of many convicted of [possessing child pornography]; a term of imprisonment would interrupt the defendant's mental health treatment; and the sentence would serve as a deterrent to others similarly situated. (Emphasis added). Id. at 356 – 57.

*Id*. at 356-357.

In the case at bar, Mr. Clements was only thirty (30) years old at the time of committing the offense.  He is not a threat to the community nor is there any allegation that he ever contemplated any sort of physical contact with a minor.  He has no prior criminal history and he has avoided any misconduct during the lengthy course of these proceedings – a circumstance the *Polito* Court noted was "atypical of many convicted of possessing child pornography." *Polito*, 215 Fed. Appx. at 357.  On his own volition, Mr. Clements sought mental health treatment for his condition.  He has maintained a rigorous treatment regimen consisting of routine group counseling.

A substantial term of incarceration is not necessary to satisfy the sentencing objectives set forth in 18 U.S.C. § 3553, and would be a particularly harsh punishment for

{1290034-1}

Mr. Clements.  His age, family circumstances, education and employment history all indicate that he presents a very low risk of any future misconduct.  As a sex offender who has been engaged in cognitive behavioral therapy, his already very low likelihood of reoffending is even further reduced.

In total, these factors support the conclusion that Mr. Clements does not present a danger to the community and it is unlikely that he will engage in unlawful conduct in the future.  Since his arrest, he has had the opportunity to reflect upon his actions as well as the consequences that he would suffer should he engage in any future criminal misconduct.  It is respectfully submitted that Mr. Clements does not present a high risk for reoffending.  His conduct underlying this offense is uncharacteristic of the way that he has tried to live his life.  Moreover, his actions were committed under circumstances that are not likely to recur.  He has admitted his mistakes and is fully committed to doing whatever is necessary to atone for his behavior.  Accordingly, counsel submits that a sentence below the advisory range would more than adequately fulfill the principles and purposes of sentencing contained in § 3553.

### 3.  The kinds of sentences available under the Guidelines.

As set forth in *Rita* and *Gall*, *supra*, a district court has discretion to impose a sentence below the Guidelines range so long as it considers the sentencing factors delineated in  § 3553(a). *Rita*, 127 S. Ct. at 2465.

### 4.   The applicable advisory Guidelines range.

Mr. Clements is subject to a total offense level of thirty-two (32) with a criminal history category of one (1).  PSR ¶32;36. The applicable Guidelines calculation spans 121-151 months of imprisonment[1]. PSR ¶55.

The Pre-Sentence Investigation Report calculated Mr. Clements' offense level as follows:

| | |
|---|---|
| *Base Offense Level for Count 1* | 22 |
| §2G2.2(b)(2) material involving pre-pubescent minor | +2 |
| §2G2.2(b)(4) material portraying sadistic or masochistic conduct | +4 |
| §2G2.2(b)(6) use of a computer | +2 |
| §2G2.2(b)(7)(D) offense involving 600 images or more | + 5 |
| Adjusted Offense Level | **35** |
| Adjustment for Acceptance of Responsibility | -3 |
| **Total Offense Level** | **32** |

PSR ¶20-32.

As previously noted, counsel submits that there are additional mitigating factors and circumstances that warrant a downward variance below the calculated Guidelines range.   For the reasons contained herein and those to be presented at the sentencing

---

[1] Again, Mr. Clements maintains a general objection to the application of and reliance upon the enhancements set forth in U.S.S.G. § 2G2.2.  As such, counsel avers that the applicable Guidelines range to be determined by the Court may be lower than is presently reflected in the PSR.  Irrespective of the calculated Guidelines range, the undersigned submits that the arguments pertaining to § 2G2.2 warrant consideration for a downward variance in this case.

{1290034-1}

hearing, Mr. Clements respectfully moves this Honorable Court to impose sentence below the advisory Guidelines range.

### 5. Pertinent Policy Statements

Congress established the Sentencing Commission for the purpose of formulating and constantly refining the national sentencing standards. *Kimbrough*, 128 S.Ct. at 570. In fulfillment of its role, the Sentencing Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id*. at 574.

The Guidelines function to advance sentencing reform objectives such as reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparence of punishment. *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing*, at 11-12 (Nov. 2004) (*Assessment*). The Sentencing Commission collected, studied and ultimately utilized data on past practices and recidivism rates in formulating the Guidelines. *Id*. at 14 (noting that the Guidelines are based in part on statistical analyses of pre-Guidelines sentencing practices); United States Sentencing Guidelines § 1A.1, introductory comments ¶3. The Sentencing Commission relied upon this data in formulating offense levels for each crime, with said offense levels corresponding to a particular recommended sentencing range. As such, the Guidelines typically represent a reasonable estimation of a fair sentencing range.

Public policy and statutorily created mandatory-minimum sentences have caused the Sentencing Commission to depart from precedent practices in setting offense levels

{1290034-1}

25

for such crimes as fraud, drug trafficking, and child crimes and sexual offenses. *Kimbrough*, 128 S.Ct. at 567.  It is respectfully submitted that the dramatic increase in sentences for these offenses have been adopted without empirical support and in spite of research demonstrating that longer prison sentences do not increase deterrence. Empirical research continues to bolster the notion that while certainty may provide a marginal deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006); *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007)(confirming that "certainty of punishment is empirically known to be a far better deterrent than severity").

The offense level computation in this case involves the utilization of Section 2G2.2. It should be noted that courts around the nation have concluded that Section 2G2.2 fails to provide meaningful guidance at sentencing.  "Rather than carefully differentiating between offenders based on their culpability and dangerousness, §2G2.2 consists of a hodgepodge of outdated enhancements that apply in nearly every case." *United States v. Abraham,* 2013 WL 2099795, *4 (D. Neb. 2013).  Repeatedly, courts have noted that rather than reflecting the experience and judgment of the Commission, the child pornography Guidelines reflect a series of policy-driven amendments. *See, e.g., United States v. Dorvee*, 616 F.3d 174 (2nd Cir. 2010); *United States v. Grober*, 624 F.3d 592 (3rd Cir. 2010); *United States v. Huffstatler*, 571 F.3d 620 (7th Cir. 2009*); United States v.*

{1290034-1}

26

*Janosko,* 355 F.App. 892, 895 (6th Cir. 2009); *United States v. Apodaca*, 641 F.3d 1077 (9th Cir. 2011).

For example, the Sixth Circuit has previously noted that Section 2G2.2 is "fundamentally different" from most other Guidelines because, whereas "Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing policies…the Commission did not use this empirical approach in formulating the Guidelines for child pornography." *McNerney,* 636 F.3d at 775–76 (*quoting Dorvee, supra*).  Citing the absence of an empirical approach, the Second Circuit asserted that Section 2G2.2 is riddled with "irrationality" and that "unless applied with great care, [it] can lead to unreasonable sentences that are inconsistent with what 3553 requires." *Dorvee*, 616 F.3d at 187.

In a 2010 United States Sentencing Commission survey of federal judges regarding Guidelines sentencing, the majority of judges agreed that the Guidelines typically prescribe appropriate sentences.  Striking, however, is the fact that when asked whether the child pornography Guidelines generate appropriate sentencing ranges, 69% of judges said that the Guideline ranges in child pornography receipt cases were too high. *See* U. S. Sentencing Commission, *Results of Survey of United States District Judges*, January 2010 Through March 2010 (June 2010), *available at* http://www.ussc.gov/Research/Research_Projects/Surveys/20100608_Judge_Survey.pdf, last visited August 19, 2013.

Sentencing statistics confirm the results of the judicial survey.  According to the Sentencing Commission, in 2010, out of 1,684 child pornography cases sentenced pursuant to Section 2G2.2, district courts issued below-Guidelines sentences in 51% of the cases, compared to 17.9% in non-child pornography cases.  U.S. Sentencing Commission, *Final Quarterly Data Report*, (2010), *available at* http://www.ussc.gov/Data_and_Statistics/Federal_Sentencing_Statistics/Quarterly_Sentencing_Updates/USSC_2010_Quarter_Report_4th.pdf, last visited August 19, 2013. Recognizing the growing call for revisions to Section 2G.2.2, the Sentencing Commission itself published a report detailing the need for reform of Section 2G2.2 to better distinguish among offenders.  *See* U.S. SENT'G COMM'N, *Report: Federal Child Pornography Offenses* (Feb. 2013).  Elaborating on this point, the Commission observed the following:

> [f]our of the six sentencing enhancements in § 2G2.2 — those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 levels — now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability. These enhancements originally were promulgated in an earlier technological era, when such factors better served to distinguish among offenders. Indeed, most of the enhancements in § 2G2.2, in their current or antecedent versions, were promulgated when the typical offender obtained child pornography in printed form in the mail.

*Id.* at ii-iii.  For instance, the Commission found that, for 2010, the enhancements for possessing materials depicting prepubescent minors, use of a computer, and number of images applied in over 96.3% of all Section 2G2.2 cases, while the sado-masochistic enhancement applied in 74.2% of all cases. U.S. Sentencing Commission, *Report to*

{1290034-1}

*Congress: Federal Child Pornography Offenses* (Dec. 2012), at 209, available at http://www.ussc.gov/Legislative-and-Public-Affairs/Congressional-Testimony-and-Reports/Sex-Offense-Topics/201212-Federal-Child-Pornography-Offenses (last visited August 19, 2013).

In a recent Sixth Circuit Opinion, Judge Merritt referenced the problems infecting the sentencing guidelines in child pornography cases: "[m]any of the groups of officials and experts who have looked into the problem of Internet child porn have reached the conclusion that the sentencing guidelines that the District Court and our Court have now enforced in this case should be greatly reduced." *United States v. Walters*, Case No. 14-3097, p. 15 (6th Cir. 2015). The Court referenced the Sentencing Commission's 2012 Report, wherein the Commission itself criticized the fairness and viability of the Guidelines in these cases. *Id.* The Commission's study arrived at the conclusion that the present child porn guidelines have "no rational basis," are "outmoded," do not "distinguish adequately among offenders based on their degrees of culpability," and have "enhancements," like the ones in this case, that are "outmoded and disproportionate."

The disagreement with the Guidelines for non-production offenders is widespread. The Report concludes, in pertinent part:

> [n]umerous stakeholders—including the Department of Justice, the Federal Defender community, and the Criminal Law Committee of the Judicial Conference of the United States—have urged the Commission and Congress to revise the nonproduction sentencing scheme to better reflect the growing body of knowledge about offense and offender characteristics and to better account for offenders' varying degrees of culpability and dangerousness.

*See Federal Child Pornography Offenses* at p. xxi.  As the Sixth Circuit noted in *Walters*, *supra*, "[u]nfortunately, the Department of Justice has not adequately communicated its position to its United States Attorneys, and so we keep getting cases like this one." *Walters*, Case No. 14-3097 at p. 16.  Both the Dissent and Concurring Opinions in *Walters* suggested that the solution to avoiding such injustices in child pornography sentencing is for district courts to recognize that Guidelines based on the Protect Act should be carefully scrutinized.  The Dissent also suggested that the harsh sentences imposed in these cases may violate the Eighth Amendment's prohibition of cruel and unusual punishment:

> [i]f ever a sentence should be labeled "excessive" and "out of proportion" to the "offender and the offense," and outside "evolving standards of decency," it is the 12-plus years of imprisonment imposed in this case on a young man and his family because he downloaded a group of deviant and disgusting child porn photographs. I am sorry that our panel has not acted to at least reduce the sentence to the five-year mandatory minimum and to express its disagreement with this unjust sentence.

*Id*. at p. 17.

The foregoing information highlights the agreement among a growing number of courts and the Sentencing Commission that the framework of Section 2G2.2 requires extensive revision to reflect technological developments in society and scientific

{1290034-1}

research, while also accounting for the spectrum of culpability associated with child pornography offenses.  Given the inadequacies of Section 2G2.2, the advisory Guidelines range produced by this Section warrants less deference.  For this reason, among others presented, it is respectfully submitted that the calculated range in this case merits less deference and a downward variance is appropriate.

## IV.    DESIGNATION REQUEST

Pursuant to 18 U.S.C. § 3621, when deciding on the place of imprisonment for a convicted individual, the Bureau of Prisons may consider "any statement by the court that imposed the sentence."  Because this Honorable Court stands in the best position to consider the history and circumstances of this case, Mr. Clements respectfully moves this Court to recommend to the Bureau of Prisons that he be designated to FCI Elkton.  He seeks placement at FCI Elkton as it is a low security facility located in reasonable proximity to his family.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Mr. Clements respectfully requests that this Honorable Court sustain the defense's objections and reduce the calculated Guidelines range based upon the inapplicability of several enhancements contained within U.S.S.G. § 2G2.2. Furthermore, Mr. Clements requests that the Court impose a downward variance from the calculated Guidelines' range, as said range is greater than necessary to comport with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

JOHN CLEMENTS
By Counsel

/s/Eric C. Nemecek
ERIC C. NEMECEK (0083195)
Counsel for Defendant
Friedman & Nemecek, L.L.C.
1360 East 9th Street, Suite 650
Cleveland, OH 44114
P: (216) 928-7700
F: (216) 820-4659
E: ecn@fanlegal.com

{1290034-1}

32

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing Position of the Defendant As to Sentencing Factors was filed on the 15th day of May, 2017 by CM/ECF, which will send a notification of such filing (NEF) to the following:

Brian McDonough
Assistant United States Attorney
Office of the United States Attorney

/s/Eric C. Nemecek
Eric C. Nemecek
Counsel for Defendant

{1290034-1}

## LIST OF EXHIBITS

Exhibit A:          Letter from Gary Echt

Exhibit B:          Letter from Dennis Bell

Exhibit C:          Letter from Andrew Dzura

Exhibit D:          Letter from Juliana Kingsbury

Exhibit E:          Letter from Cari Furman

Exhibit F:          Letter from Reverend Andrew Yavornitzky

Exhibit G:          Letter from Thomas Alexander

Exhibit H:          Letter from Barry Sabol

Exhibit I:          Letter from Christa Newtz

Exhibit J:          Letter from Deborah Clements

Exhibit K:          Letter from Maria Kucmanic

Exhibit L:          Letter from Andrew Clements

Exhibit M:          Letter from Bradley Forment

Exhibit N:          Letter from Janet Ursinyi

Exhibit O:          Letter from Richard Mirauntz

Exhibit P:          Letter from Darlene Horabik

Exhibit Q:          Letter from Michele Schroeder

Exhibit R:          Letter from Anna Dombrovskaya

Exhibit S:          Letter from Bobby Kingsbury

Exhibit T:          Letter from Cameron Robinson

{1290034-1}

Exhibit U:             Letter from Cara Hoyt

Exhibit V:             Letter from Carol Bobosh

Exhibit W:            Letter from Chad Nicoletti

Exhibit X:             Letter from Cheryl Uhren

Exhibit Y:             Letter from Cindy Renda

Exhibit Z:             Letter from Cole Schlafer

Exhibit aa:            Letter from Daria Fickes

Exhibit bb:            Letter from David Campbell

Exhibit cc:            Letter from David Kucmanic

Exhibit dd:            Letter from Deborah Covelli

Exhibit ee:            Letter from Denise Fross

Exhibit ff:            Letter from Donald Campbell

Exhibit gg:            Letter from Donna Furman

Exhibit hh:            Letter from Doug Uhren

Exhibit ii:            Letter from Evan Zadd

Exhibit jj:            Letter from Garrett Ormiston

Exhibit kk:            Letter from George Gresko

Exhibit ll:            Letter from George Tintor

Exhibit mm:            Letter from James Horabik

Exhibit nn:            Letter from James Renda

Exhibit oo:            Letter from Janet Ursinyi

Exhibit pp:          Letter from Jason Rozycki

Exhibit qq:          Letter from Jennifer Cunningham

Exhibit rr:          Letter from Jim Spoerl

Exhibit ss:          Letter from John Zdinak

Exhibit tt:          Letter from Katie D. Fantis

Exhibit uu:          Letter from Katie Horabik

Exhibit vv:          Letter from Ken Walker

Exhibit ww:          Letter from Kristen Campbell

Exhibit xx:          Letter from Larry Furman

Exhibit yy:          Letter from Laura Abernathy

Exhibit zz:          Letter from Laurie Kay Alexander

Exhibit aaa:         Letter from Lea Povozhaev

Exhibit bbb:         Letter from Linda Darrah

Exhibit ccc:         Letter from LuAnn Dzura

Exhibit ddd:         Letter from Mark Josliin

Exhibit eee:         Letter from Mary Anne Lynch

Exhibit fff:         Letter from Mary Gresko

Exhibit ggg:         Letter from Meredith Nicoletti

Exhibit hhh:         Letter from Michael Abernathy

Exhibit iii:         Letter from Michael Clements

Exhibit jjj:         Letter from Michael Ormiston

{1290034-1}

| | |
|---|---|
| Exhibit kkk: | Letter from Nichole Zadd |
| Exhibit lll: | Letter from Patricia Ormiston |
| Exhibit mmm: | Letter from Paul Mazurik |
| Exhibit nnn: | Letter from Paula Tintor |
| Exhibit ooo: | Letter from Peter Georges |
| Exhibit ppp: | Letter from Robert Wick |
| Exhibit qqq: | Letter from Ruth Bede |
| Exhibit rrr: | Letter from Sarah Schlafer |
| Exhibit sss: | Letter from Shawn Cunningham |
| Exhibit ttt: | Letter from Susan Hoffacker |
| Exhibit uuu: | Letter from Valerie Spoerl |